58 CCPA

**Application of Robert V. ANTLE.**

**Patent Appeal No. 8538.**

United States Court of Customs and Patent Appeals.

July 1, 1971.

Rehearing Denied Oct. 7, 1971.

United States Customs Court, sitting by designation.

Henry Gifford Hardy, San Francisco, Cal., Ellsworth H. Mosher, Donald Denton, Arlington, Va. (Stevens, Davis, Miller & Mosher), Arlington, Va., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Edward E. Kubasiewicz, Alexandria, Va., Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, LANE, Judges, and LANDIS, Judge,

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 60–64 in appellant's application serial No. 510,723, filed October 1, 1965, as a continuation of application serial No. 132,672, filed August 21, 1961. We affirm.

## THE INVENTION

Appellant claims mobile produce packing plants, illustrated by Fig. 3 of his application:

*Fig. 3.*

[A4246]

The produce is cut or picked in the field by one crew of workers, then wrapped and heat-sealed in clear plastic film which permits respiration by another crew of workers riding on the vehicle in seats 20, then passed on conveyors 15 through warm-air heating chambers 28 which shrink the film to tightly encase the produce, and further transported on conveyor 40 to the unnumbered, mounted platform at the right in the picture, on which the wrapped produce units are packed for shipping. Claims 63 and 62 (subparagraphing supplied) are representative, respectively, of the broad and narrow claims on appeal:

63. A vehicle for continuously harvesting and packaging crop products in the field adapted to move directionally on the ground through spaced rows of growing crops comprising

a machine supported by wheels positioned on said machine;

oppositely positioned, retractable wing-like frame projections horizontally supported by said machine, said frame projections being adaptable to be extended and positioned over a plurality of rows of crops,

said machine having positioned thereon a plurality of spaced product wrapping stations each adapted to be manned by a workman in proximity to said growing crops;

a supply of breathable plastic film positioned at each wrapping station adapted to encase tightly units of crop products when wrapped therein immediately after harvesting in the field so as to retain in the crop products their field-freshness;

a conveyor means positioned on said machine for continuously collecting and moving the tightly encased units of crop products from said wrapping stations; and

a packing station operably associated with said conveyor means for receiving the encased units of product for packaging them in boxes while on said vehicle for shipment to market.

62. A vehicle adapted to move directionally along the ground through spaced rows of growing crops comprising

a central frame;

wheels positioned on said frame for supporting movement of the vehicle;

oppositely positioned projections horizontally supported by said frame;

a conveyor means positioned on each of said projections having its movement toward said central frame and extending part way therein;

a plurality of spaced wrapping stations positioned on each of said projections, each wrapping station having positioning means for a workman mounted on said projections so as to locate the workman in close proximity to said growing crops;

heat sealing means positioned on each wrapping station;

a roll of plastic film positioned at each wrapping station;

means for severing a sheet of plastic from each roll;

shrinking means positioned in each projection with the conveyor means in each projection passing therethrough; and

a third conveyor means positioned at substantially right angles and under the ends of the conveyor means extending from the projections into the central frame, said third conveyor being inclined upwardly and extending out of said central frame.

Claim 64, which depends from claim 63, additionally recites means for heat shrinking the breathable plastic film about the produce. Claim 60, which is independent, is substantially similar to claim 62 except that it recites the last element recited in claim 62 functionally and adds the recitation "means for packaging in shipping cases while on said vehicle for shipment to market." Claim 61, which depends from claim 60, adds "heat sealing means for tack sealing said plastic film after it is wrapped about the units of crop products."

## THE REJECTION

The references are:

| | | |
|---|---|---|
| McLaren | 2,337,615 | Dec. 28, 1943 |
| Allen | 2,865,765 | Dec. 23, 1958 |
| Payton et al. | 2,906,627 | Sept. 29, 1959 |
| Miller | 2,987,864 | June 13, 1961 |

The examiner rejected claims 63 and 64 under 35 U.S.C. § 103 as unpatentable over McLaren in view of Allen and claims 60–62 under 35 U.S.C. § 103 as unpatentable over McLaren in view of Allen, Payton, and Miller. The board affirmed the rejection of all five claims on the same ground and for substantially the same reasons.

McLaren discloses a mobile produce packing plant in which the produce is packed directly in crates without previously having been encased in film.

Across the rear of the vehicle and extending to the sides of the main body thereof is a structure, the ends of which may be "collapsed [back into the body] when the machine is conditioned for road travel." On this structure three platforms are provided for workmen who pack produce picked or cut by other, dismounted workmen into crates, after which the crates are transported into a refrigerated storage compartment at the front of the vehicle by means of a T-shaped conveyor system running in from the platforms to the center of the vehicle.

Allen teaches the use of heat-shrinkable, "breathable," plastic film to encase produce "for preserving the nutritious and flavorable [sic] ingredients in freshly picked produce right up to the instant of eating." The produce is heat-sealed·in the film and the film then tightly shrunk around the produce by immersion in hot water.

Payton discloses an apparatus for shrinking film wrappers around food by passing the wrapped units through a warm-air heating chamber.

Miller discloses a wrapping device comprising a roll of heat-sealable wrapping film, a wrapping table, a hot wire for cutting the wrapping material at the desired length, and a heat sealing plate.

## OPINION

The machine disclosed by McLaren differs considerably in detail from appellant's preferred embodiment, but we agree with the solicitor that, but for the plastic wrapping, the shrinking thereof, and the location of the actual crating operation, appellant's claims may be read on McLaren's device. Furthermore, we agree with the Patent Office that all the other elements of appellant's claims except the location of the crating operation are disclosed in the other references and that, if adapting the plastic-wrapping technology to McLaren's mobile produce packing plant was obvious, the latter would be such a straightforward matter of design that no reference disclosing it would be required to make it prima facie obvious. However, the fundamental question in this case, which involves a combination of various elements known in the prior art, is whether the combination of the old elements would have been obvious to one of ordinary skill in the art at the time the invention was made.

Appellant argues that the references may only be combined through hindsight, using appellant's own disclosure as a guide. The solicitor, on the other hand, relies on In re Winslow, 365 F.2d 1017, 53 C.C.P.A. 1574 (1966), for the proposition that a combination of features shown by references is legally obvious if it would have been obvious to "the inventor * * * working in his shop with the prior art references—which he is presumed to know—hanging on the walls around him," id. 365 F.2d at 1020, 53 C.C.P.A. at 1578, a statement made by the writer and limited by reference to "a case like this," which limitation it is desired to emphasize. As we have often remarked, language from an opinion should not be divorced from the facts of the case in which the language was used.

In Winslow we said that the principal secondary reference was "in the very same art" as appellant's invention and characterized all the references as "very pertinent art." The language relied on by the solicitor, quoted above, therefore, does not apply in cases where the very point in issue is whether one of ordinary skill in the art would have selected, without the advantage of hindsight and knowledge of the applicant's disclosure, the particular references which the examiner applied. As we also said in Winslow, "Section 103 requires us to presume full knowledge by the inventor of the prior art in the field of his endeavor" (emphasis, except of "prior," added), but it does not require us to presume full knowledge by the inventor of prior art outside the field of his endeavor, i. e., of "non-analagous" art. In that respect, it only requires us to presume that the inventor would have that ability to select and utilize knowledge from other arts reasonably perti-

nent to his particular problem which would be expected of a man of ordinary skill in the art to which the subject matter pertains.

■ In this case, McLaren, the principal reference, is also a mobile produce packing plant, i. e., it is "in the very same art," and Allen, the principal secondary reference, is for a process of preserving fresh produce, which is the whole object of appellant's invention. McLaren discloses that it is an object of his invention "to permit greater flexibility in the harvesting of crops by eliminating the usual packing plant and performing all the packaging in the field," and Allen specifies that "The steps of the present invention should be carried out in rapid succession subsequent to picking the produce directly out of the fields or orchards." Taken together, these two statements would certainly seem to suggest combining at least these two references. Furthermore, while Payton and Miller might initially be thought to be in arts foreign to mobile produce packing technology, once the motive to combine McLaren and Allen is established, the additional combination of Payton and Miller therewith tends to flow from the close relationship of Allen with Payton and Miller.

For the above reasons, it seems to us that the Patent Office made out a strong case of prima facie obviousness and the burden fell on appellant to rebut it, if he could, with objective evidence of non-obviousness. While there are three newspaper articles and one short journal article discussing appellant's invention printed in the record, it is apparent that they are all reportorial in nature, merely repeating appellant's claims for his device, rather than evaluative, and they are not even mentioned in appellant's brief. Additionally, that brief contains an unsupported and somewhat ambiguous statement * which we take to be an assertion that appellant's device has supplanted prior-art mobile packing plants. However, for the most part appellant has contented himself with arguing the superiority of his devices to McLaren's vintage 1940 mobile field packing plant and the superiority of immediate field packing to subsequent packing elsewhere, which he obviously was not the first to appreciate. Appellant has not submitted any persuasive evidence that the particular manner of combining prior-art knowledge suggested by the Patent Office would not have been obvious to a person of ordinary skill in the designing of equipment for commercial farming at the time appellant made his invention.

Accordingly, the decision of the board is affirmed.

Affirmed.

---

* "BUD ANTLE, president of BUT ANTLE, INC., of Salinas, California and his son ROBERT V. ANTLE, the inventor here, have long been known as pioneers of the most forward looking kind, in the growing of crops for market and in the transportation of such crops to reach the customer in the best possible condition with the lowest possible price (R. 95–105). Their many inventions and new approach ideas have been for the benefit and improvement of farm labor as well as for the benefit and improvement of products for the consumer. This most progressive approach, invented by ROBERT V. ANTLE, to farming on a large scale started long before these approaches were popular or even acceptable. In fact they were openly resisted by other farmers and growers at the time (R. 99). *The changes engineered by the Antles on many new approaches to farming have become wholly accepted in the last decade.*" (Emphasis ours.)